Argued and submitted July 30, affirmed December 29, 2010

In the Matter of the Compensation of
Bradley S. Clark, Claimant.

UNITED AIRLINES,
*Petitioner,*

*v.*

Bradley S. CLARK,
*Respondent.*

Workers' Compensation Board
0700246; A139521

246 P3d 30

Jerald P. Keene argued the cause and filed the briefs for petitioner.

Spencer D. Kelly argued the cause for respondent. On the brief were Jacqueline M. Jacobson and Klarissa Delehant.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Employer seeks review of an order of the Workers' Compensation Board upholding an administrative law judge's (ALJ) order requiring employer to accept claimant's claim for bilateral thumb joint osteoarthritis as an occupational disease. Employer advances two assignments of error. First, it contends that the board's order is not supported by substantial reason, because it failed to explain adequately why it found one physician's opinion that claimant's condition is work related more persuasive than the opinions of five other physicians that claimant's work was not. Second, employer contends that the single medical opinion on which the board relied fails to constitute substantial evidence in support of the board's finding. We conclude that the board's order is supported by substantial reason and substantial evidence and affirm.

Claimant began working for employer in 1990 as an airline luggage handler. Beginning in 2000, he experienced progressively worsening hand and thumb pain. By 2004, claimant was experiencing ongoing pain in both hands while performing his work duties. In November 2004, claimant bumped his hand against a luggage cart, causing him extreme pain, and he decided to pursue treatment. He filed a claim on November 19, 2004, which employer accepted as a disabling claim for bilateral carpal tunnel syndrome.

Dr. Johnson, an orthopedic surgeon, performed bilateral carpal tunnel release surgeries. Early in his treatment of claimant's carpal tunnel syndrome, Johnson became concerned that claimant might have an alternative diagnosis. Meanwhile, in October 2005, as part of the closure process for the 2004 carpal tunnel syndrome claim, claimant saw Dr. Smith, a neurologist, who opined that claimant's thumb condition is degenerative, with work aggravating the symptoms but not causing them. Johnson concurred in Smith's report. Claimant also saw Dr. Sohlberg, an orthopedic surgeon, who concluded that claimant's thumb condition is hereditary and does not have any relationship to work. The carpal tunnel syndrome claim was closed with no award of permanent partial disability.

Claimant's bilateral thumb pain persisted. Claimant saw Drs. Buehler and Woolley, both hand surgeons, and, in March 2006, he began treatment with Woolley, who diagnosed bilateral trapeziometacarpal joint arthritis. Claimant filed an occupational disease claim, seeking to establish the compensability of his thumb condition. Employer requested an independent medical examination (IME) by Dr. Fuller, an orthopedic surgeon, and Dr. Bell, a neurologist. They diagnosed bilateral trapeziometacarpal arthritis and opined that claimant's condition preexisted his November 19, 2004, injury, that it is not related to work activity, and that the major contributing cause of claimant's condition is genetic. They explained: "For some reason, in some people, the volar beak ligament, which is the major stabilizer of the trapeziometacarpal joint, becomes stretched out with advancing age." Fuller and Bell did not believe that claimant's work activities were the cause of his osteoarthritic thumb condition, reasoning that if they were, one would expect to find a similar osteoarthritic breakdown of his more vulnerable carpal, metacarpal, and interphalangeal joints, which was not present. Drs. Smith and Buehler concurred in the IME panel's report. Employer denied the claim.

Woolley performed surgical fusions on claimant's right and left thumbs, in July 2006 and February 2007, respectively. He disagreed with the other physicians. In a letter prepared by claimant's counsel, in which Woolley concurred, he expressed his opinion that claimant's thumb condition was work related and that work was the major contributing cause of the condition. Woolley explained:

"You noted that [claimant] is very young to develop osteoarthritis, as he is only 43 years old. If his osteoarthritis was due to aging, you would expect it to have developed in his 60's or 70's.

"You do not believe that [claimant] has a genetic predisposition to developing osteoarthritis. You indicated that none of the other joints in his hands, such as his fingers, reveal osteoarthritis. You noted that he does not have osteoarthritis in any other part of his body, either. You have no reason to believe that he has any genetic pre-disposition to developing osteoarthritis. You have no reason to believe that [claimant] has any congenital abnormalities.

"You also noted that osteoarthritis in the thumbs is typically seen in women, in particular post-menopausal women. You noted that [claimant] obviously does not fall within this category and that this also supports your conclusion that his osteoarthritis is work related.

"You reasoned that [claimant] performed significant lifting for 16 years which required repetitive pinching of his thumbs. You indicated that this kind of grabbing/pinching activity places significant loading on the thumbs and ultimately leads to a wear and tear of the thumb joints. You stated that wear and tear over time led to instability of his joints causing the osteoarthritis. You stated that his TMC or thumb joints became unstable over time because of the repetitive grabbing/pinching use. You stated that over time with continued use, his cartilage in his thumbs wore off due to the repetitive friction from the pinching/grabbing.

"You stated that contusions/strains, such as the work injury he sustained on November 19, 2004, also contribute to the osteoarthritis, because they cause damage to the cartilage which leads to instability of the ligament. You stated that jamming one's thumb also contributes to the development of osteoarthritis because it damages the ligament causing instability and then osteoarthritis.

"* * * * *

"You also reasoned that the thumb basal joint (where the thumb meets the wrist) is exposed to very high stresses with grabbing activities and that the forces felt at the tip of the thumb are multiplied twelve times in their effect on the thumb base, thus predisposing this joint to wear and tear. You stated that [claimant's] work activities as a ramp serviceman are the exact kind of activities to cause wear and tear to the thumb joint because of the grabbing involved and that this wear and tear led to the osteoarthritis in his thumbs.

"*You noted several medical articles that support your medical opinion and conclusion.* Enclosed please find two articles dealing with pinching activities and development of osteoarthritis in the thumb joints as a result. The two articles are 1) 'Contact patterns in the trapeziometacarpal joint: the role of the palmar beak ligament' by Pelligrini, VD, Olcott, CW, Hellenberg, G. (J. Hand Surg. 1993) and 2) 'Sequential Wear Patterns of the Articular Cartilage of the Thumb Carpometacarpal Joint in Osteoarthritis' (The

Journal of Hand Surgery/Vol. 28A No. 4 July 2003). If there are other articles that you feel are relevant, please feel free to indicate in the comments section below."

(Emphasis added.) The concurrence letter then rejected the opinions of the other doctors that claimant's condition is congenital and not related to work. In discounting the opinions of Fuller and Bell, Woolley found fault with their conclusion that claimant's condition was genetic. Specifically, in reference to Fuller and Bell's reference to the volar beak ligament, which they characterized as the "major stabilizer of the trapeziometacarpal joint," and which they stated becomes stretched out with advancing age, Woolley responded:

"You stated that you believe Drs. Fuller and Bell are basing their medical opinion on old literature. *You noted that the volar beak ligament is not the major stabilizer of the trapeziometacarpal joint but that the dorsal ligament is the major stabilizer.* You also noted that [claimant] is not a perimenopausal female and does not fall under this category which makes it more likely that his osteoarthritis is work related.

"Drs. Fuller and Bell also concluded that 'Regarding a disease model, [claimant's] work activities did not cause "disease" of his trapeziometacarpal joints because (a) activities do not cause disease, and (b) if activities did cause disease, he should have similar osteoarthritis breakdown of his other carpal joints, his metacarpal joints, and his interphalangeal joints.'

"You do not agree with these conclusions. You stated that the joint in the hand that is most likely to get osteoarthritis from activity and wear and tear is the trapeziometacarpal (TMC) joint. *You stated that the medical literature clearly states that activities, in particular pinching and grabbing activities of the thumb, cause osteoarthritis in the TMC joint. Enclosed are some of the medical articles you referred to in your phone conference.*

"Drs. Fuller and Bell also noted that 'Regarding a congenital abnormality model, this theory best explains the presence of [claimant's] trapeziometacarpal arthritis. In some people there is a congenital weakness of the volar beak ligament which stabilizes the trapeziometacarpal joint. This ligament gradually stretches out until failure

occurs in the fourth decade with resultant radial instability, subluxation, and eventual destruction of the trapezio-metacarpal joint.'

"You do <u>not</u> agree with this conclusion. You stated that you have no reason to believe that [claimant] has any congenital abnormality in his thumbs. You again *noted that the volar beak ligament does not stabilize the TMC joint, but rather the dorsal ligament does.*"

(Emphasis added; underlining in original.)

Following a hearing, the ALJ set aside employer's denial of the osteoarthritis claim. Evaluating the competing opinions of the various physicians, the ALJ assigned relatively little weight to the opinions of Johnson, Smith, Sohlberg, and Buehler, either because they lacked expertise on the hand, or because their contacts with claimant had related primarily to the carpal tunnel syndrome and had been very limited with respect to the thumb condition. The ALJ also noted that the IME panel, Fuller and Bell, did not include a hand surgeon specialist. Instead, the ALJ agreed with claimant that Woolley offered the best-reasoned analysis of causation. The ALJ explained:

"I agree due to claimant's relative young age at the onset of the [thumb] condition, the nature of claimant's repetitive heavy grabbing work activities over time, the lack of any evidence of an [osteoarthritic] condition in other joints and the * * * joint in question being the most vulnerable joint. Accordingly, based on Dr. Woolley's most persuasive medical opinion, the defense denial is set aside."

The board adopted the ALJ's order and affirmed it, agreeing with his finding that Woolley's opinion was most persuasive. The board was impressed that Woolley, in rejecting the genetic predisposition theory adopted by the other physicians, had taken claimant's individual circumstances into account. In contrast, the board concluded, the IME report by Fuller and Bell appeared to be based on generalities, rather than on claimant's specific situation and work activities.

One board member dissented, expressing the view that Woolley's opinion was faulty, because the medical literature on which Woolley had relied did not support his

conclusion that the volar beak ligament is not the major stabilizer of the trapeziometacarpal joint.

In response, the majority of the board explained that it lacked the medical expertise to evaluate whether Woolley's opinion was contradicted by the medical article. In any event, the board downplayed any discrepancy as incidental:

> "In any event, whether or not the 'volar beak ligament' is the major stabilizer of the trapeziometacarpal joint is not the critical issue. The important question is whether or not claimant's bilateral thumb joint osteoarthritis was caused in major part by his work activities. Drs. Fuller and Bell opined that claimant's arthritis was 'genetic' and based on 'congenital weakness.'"

The board concluded that Woolley's opinion established that claimant's work activities, and not a genetic predisposition, were the major contributing cause of his bilateral thumb joint osteoarthritis, as well as the major contributing cause of any pathological worsening of the disease.

On judicial review, employer begins by contending that the board failed to explain adequately material discrepancies in Woolley's report, and that it was required to do so before relying on that opinion. Employer points out what it believes are two such discrepancies.

The first discrepancy, employer argues, lies in the fact that Woolley's concurrence letter notes that claimant is "very young to develop osteoarthritis, as he is only 43 years old." Employer points out that, in fact, claimant was *50* years old when Woolley endorsed the letter. Employer contends that, in light of the degenerative nature of claimant's condition, his exact age is important, and the board must explain the discrepancy as to that foundational fact.

The linchpin of employer's argument is that there is an unexplained discrepancy about claimant's age. We have reviewed the medical record, however, and find no such discrepancy. When the entire medical record is considered, it becomes clear that Woolley was aware of claimant's correct age, and that the reference in the concurrence letter was to claimant's age when he first reported thumb symptoms in

2000, at which time he was, in fact, 43. We note that, consistently with that fact, the ALJ's opinion—which the board adopted—referred to claimant's relatively young age "at the onset of" of the degenerative condition.

The second asserted discrepancy is one that employer contends exists between Woolley's opinion and a medical article that Woolley himself provided in support of his opinion. Specifically, employer observes, Woolley's concurrence letter took issue with the opinions of other physicians who had explained their opinions that claimant's condition was degenerative by reference to the fact that the volar beak ligament becomes stretched with advanced age. Woolley, employer notes, asserted that the volar beak ligament actually does not stabilize the trapeziometacarpal joint, but rather, the dorsal ligament does, yet that assertion is contradicted by at least one medical article that Woolley's own concurrence cited. That article, from the Journal of Hand Surgery, states:

> "This study establishes the palmar [also, apparently, referred to as the 'volar'] beak ligament as a vital static structure that influences trapeziometacarpal contact patterns, suggesting a relationship with degeneration of articular cartilage of this joint inherently prone to translational instability by virtue of its limited bony constraint. Primary arthritic degeneration occurs in the palmar contact areas of the trapeziometacarpal joint, where shear forces are amplified by increased translational laxity secondary to degeneration of the stabilizing beak ligament."

We have reviewed the article in question and, once again, it is not clear to us that there is a discrepancy at all, much less one that the board did not adequately explain. On the one hand, the article does seem to suggest that the "palmar" or "volar" ligament is indeed involved in stabilizing the trapeziometacarpal joint. The article referred to the ligament as the "stabilizing beak ligament," suggesting that the ligament is involved in stabilizing. On the other hand, Woolley's concurrence letter does not state that the volar beak ligament has *no* relationship to the trapeziometacarpal joint. Nor does the article appear to address the role that the dorsal ligament plays in the development of arthritis in the trapeziometacarpal joint, as Woolley's concurrence letter does.

Aside from that—and perhaps most important—the board explained that whether the volar beak ligament was a stabilizing ligament simply was not central to Woolley's conclusion that claimant's condition was work-related and not congenital. We conclude that that is an adequate explanation of any potential inconsistency and reject employer's contention that the board's failure to provide further explanation of its reliance on Woolley's opinion requires the conclusion that the order is not supported by substantial reason. *See Schoch v. Leupold & Stevens*, 325 Or 112, 118, 934 P2d 410 (1997) (substantial reason requirement necessitates "a sufficient explanation to allow a reviewing court to examine the agency's action").

Employer also contends that, in light of the contradictions in Woolley's report, it does not provide substantial evidence in support of the board's finding that claimant's thumb condition is compensably related to his work. As the board noted, however, Woolley was an expert in hand surgery and was the surgeon who had performed claimant's surgery. He thoroughly explained his view that claimant's condition was not genetic and explained why the contrary view was incorrect. As the board noted, his comment about the volar beak ligament not stabilizing the joint, even if inconsistent with the cited medical article, does not appear to have been central to his conclusion that claimant's condition is work related and not genetic. We conclude that the record as a whole contains substantial evidence to support the board's findings. *Armstrong v. Asten-Hill*, 90 Or App 200, 206, 752 P2d 312 (1988).

Affirmed.